# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

DERRICK ANDREW ROBERSON,

     Movant,

    v.

UNITED STATES OF AMERICA,

     Respondent.

CIVIL ACTION NO.: 2:17-cv-2

(Crim. Case No.: 2:15-cr-10)

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On January 21, 2016, this Court sentenced Derrick Andrew Roberson ("Roberson") to 135 months' imprisonment following his guilty plea to conspiracy to possess with intent to distribute and distribute methamphetamine and oxycodone. Roberson, who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, has now filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 328.)[1] Roberson claims that errors by the Court and his trial counsel plagued his sentence.

Essentially, Roberson contends that the Court and counsel operated as if he had been convicted of state charges that have now been dismissed and that were pending against him at the time of his federal sentencing. However, as laid out below, the Court and counsel were well aware that Roberson's state charges had not yet been adjudicated at the time of his sentencing in this case. Further, his federal sentence was not influenced by the charges pending against him in state court. Rather, the Court based its sentence on the relevant conduct Roberson committed

---

[1] The pertinent record documents in this case are filed on the docket of Roberson's criminal case, <u>United States v. Roberson</u>, 2:15-cr-10 (S.D. Ga., May 18, 2015), and many are not included in Roberson's civil docket. Thus, for ease of reference and consistency, the Court cites to Roberson's criminal docket in this Order and Report and Recommendation.

during his involvement in the drug distribution conspiracy charged in this federal case. Thus, Roberson's sentence resulted from his own admitted criminal conduct, not any errors by the Court or his counsel. Moreover, while Roberson claims that he played a minimal role in the offense and, thus, the Court should have reduced his sentence, the facts of Roberson's case belie that claim.

For these reasons, which I detail more fully below, I **RECOMMEND** the Court **DENY** Roberson's Motion to Vacate, Set Aside, or Correct his Sentence. Further, I **RECOMMEND** that the Court **DENY** Roberson a Certificate of Appealability and *in forma pauperis* status on appeal. The Court should **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.[2]

## BACKGROUND

On May 18, 2015, the grand jury for this District returned a seven-count Indictment against Roberson and eight co-Defendants. (Doc. 3.) The grand jury charged Roberson with conspiracy to possess with intent to distribute, and to distribute, a quantity of methamphetamine and oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 1). (Id.) Roberson was also charged with possessing methamphetamine with the intent to distribute on or about January 26, 2015 (Count 3). Id. The Government asserted in its Penalty Certification that

---

[2] Roberson is not entitled to an evidentiary hearing. Roberson has the burden of establishing the need for an evidentiary hearing. Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984). He would be entitled to a hearing only if his allegations, if proved, would establish his right to collateral relief. Townsend v. Sain, 372 U.S. 293, 307 (1963). "Under Rules Governing Section 2255 Cases, Rule 4(b), a district court faced with a 2255 motion may make an order for its summary dismissal 'if it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'" Broadwater v. United States, 292 F.3d 1302, 1303 (11th Cir. 2002) (per curiam). Accordingly, no hearing is required when the record establishes that a Section 2255 claim lacks merit. United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984). Additionally, the Court need not hold a hearing where the record reveals the claim is defaulted. McCleskey v. Zant, 499 U.S. 467, 494 (1991). Roberson has not established any basis for an evidentiary hearing because the record reveals that all of the issues he raises either lack merit or are procedurally defaulted, waived, or barred.

Roberson faced not more than twenty years' imprisonment as to each of Counts One and Three. (Doc. 4.)

Roberson and his appointed attorney, Mr. Ronald E. Harrison, II, were able to negotiate a plea agreement with the Government whereby Roberson agreed to plead guilty to Count One and to waive his rights to appeal and collaterally attack his sentence with limited exceptions. (Doc. 246.) The Government agreed to dismiss Count Three, to not object to a recommendation from the probation officer that Roberson receive a three-level reduction for acceptance of responsibility, to not file a sentencing enhancement pursuant to 28 U.SC. § 851, to not seek forfeiture of property as to Roberson, and to recommend that Roberson not receive an enhancement in his Guidelines range for his role in the offense pursuant to U.S.S.G. § 3b1.1. (Id.) Further, if Roberson decided to cooperate, he agreed to provide full and truthful information to the Government. (Id.) The Government agreed that, if Roberson chose to cooperate, it would consider whether Roberson's cooperation with the Government qualified as "substantial assistance" and warranted the filing of a motion for downward departure. (Id.) In the Plea Agreement, Roberson agreed that he "has had the benefit of legal counsel in negotiating this agreement. Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney." (Id. at p. 9.)

On October 14, 2015, Roberson appeared before the Honorable Lisa Godbey Wood for a change of plea, or Rule 11, proceeding. (Doc. 331.) At the hearing, Judge Wood engaged in an extensive plea colloquy with Roberson. She explained to Roberson that the decision to plead guilty was an important one, that the decision was entirely his decision, and that she wanted to be certain that Roberson understood all of the important considerations that go into the decision.

(Id. at pp. 2–3.)  Judge Wood inquired whether anyone had forced Roberson to plead guilty, and he said no one had done so and that pleading guilty was what he wanted to do.  (Id. at pp. 3–4.)

Judge Wood had Roberson placed under oath before asking him a series of questions. (Id.)  He was able to recount his personal information, including his age, the ages of his children, and his residence.  (Id. at pp. 4–5.)  Roberson testified that he reached the ninth grade in school and received his General Equivalency Degree and some technical school training, and that he held a number of jobs.  (Id. at p. 5.)  Roberson then stated that he had no physical or mental injury or disability, and that though he took arthritis medication and a muscle relaxer, he had not had any alcohol or drugs in the prior forty-eight hours.  (Id. at p. 6.)

Judge Wood explained to Roberson that he was presumed innocent and the Indictment was not evidence of his guilt.  (Id. at pp. 6–7.)  She also explained that he did not have to plead guilty, and if he chose to persist in his not guilty plea, he would have the right to a public and speedy trial by jury, a presumption of innocence during that trial, and the assistance of counsel through every phase of the case.  (Id. at pp. 7–8.)  Judge Wood told Roberson that if he went to trial he could see, hear, confront, and cross-examine the Government's witnesses and evidence, call witnesses on his behalf, and testify himself or remain silent.  (Id.)  Judge Wood cautioned Roberson he would be waiving these rights if he pleaded guilty.  (Id. at p. 8.)  She explained that, if she accepted his guilty plea, there would be no right to trial of any kind and all that would remain of his case would be the sentencing phase.  (Id. at pp. 8–9.)  Roberson stated that he understood, and he testified that he had no questions regarding the rights he was waiving.  (Id.)

Roberson also stated he and Mr. Harrison reviewed the Indictment together; that he had the opportunity to talk to Mr. Harrison about the facts of his case, the underlying conduct, and the proposed plea agreement; and that Mr. Harrison had discussed the law and the facts

pertaining to his case. (Id. at p. 9.) Roberson specifically stated that he and Mr. Harrison had discussed in general terms the application of the Sentencing Guidelines. (Id.) Roberson testified that he was satisfied with Mr. Harrison's services and that he had no complaints about Mr. Harrison whatsoever. (Id. at p. 10.)

Judge Wood reviewed Count One of the Indictment with Roberson and discussed the essential elements of the crimes for which he was charged and what the Government would have to prove if he went to trial. (Id. at pp. 10–12.) Roberson responded that he understood these elements and what the Government would have to prove if he went to trial and that by pleading guilty he would admit that those elements are satisfied. (Id. at pp. 11–12.) Judge Wood advised Roberson of the penalties she could impose on the count to which he was pleading guilty. (Id. at p. 12.) She stated, "Now the maximum possible penalty that I could ever impose for a violation of that particular offense is not more than 20 years['] imprisonment, a fine of not more than a million dollars, at least three years['] supervised release, and a $100.00 mandatory special assessment. Do you understand those are the maximum possible penalties that I could impose?" (Id.) Roberson responded that he understood. (Id.) Moreover, Judge Wood explained to Roberson that, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553, and she outlined the factors she would consider at sentencing. (Id. at pp. 12–13.) She explained to Roberson that she would consider, "[his] role, what [he] did in the case, [his] criminal history or lack thereof and whether [he] came here and told the truth and accepted responsibility for [his] actions." (Id. at p. 13.) Judge Wood asked Roberson if he had any questions about sentencing, and he responded that he did not. (Id.) Roberson testified that no one had promised him an exact sentence. (Id.) Judge Wood explained that all that anyone could give him is a "best guess" or

"best estimate" of what his Guidelines range would be, and that such an estimate would in no way bind the Court. (Id.)

Judge Wood affirmed with Roberson that he had given Mr. Harrison permission to negotiate a plea agreement with the Government. (Id. at p. 14.) She then asked the Assistant United States Attorney ("AUSA") to summarize the provisions of that plea agreement. AUSA Carlton Bourne stated:

> Your Honor, the Government agrees not to object to a recommendation from Probation that the Defendant receive a three-level reduction for acceptance of responsibility based on the timeliness of the Defendant's plea and provided he truthfully admits the conduct comprising the offense of conviction. The Government agrees to consider whether his cooperation qualifies as substantial assistance and warrants the filing of a motion for downward departure or a motion to reduce sentence. The Government agrees not to file a 21 USC 851 enhancement if applicable. The Government agrees not to seek forfeiture in this case regarding any property belonging to the Defendant and the Government agrees to recommend that no role enhancement pursuant to the sentencing guidelines be applied to this Defendant.
>
> The Defendant agrees to plead guilty to Count 1. The Government will dismiss the remaining counts of the indictment against the Defendant. The Defendant agrees to acknowledge at the time of the plea the truth of the factual basis contained in the plea agreement. Defendant agrees to pay on the date of sentencing any assessments imposed by The Court. He agrees to provide full, complete, candid and truthful cooperation to the Government. The Defendant agrees to waive his right to appeal on any grounds with only three exceptions and the Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method including a 2255 motion with one exception, and that's the extent of the plea agreement, Your Honor.

(Id. at pp. 14–15.) Judge Wood asked Roberson if AUSA Bourne's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was. (Id. at p. 15.) Roberson also stated he read the plea agreement before he signed the agreement. (Id.) Roberson reaffirmed that no one had made him any promises regarding the outcome of his case other than the provisions contained in the plea agreement. (Id.)

Judge Wood then specifically addressed the direct appeal waiver with Roberson, stating the following:

> I do want to pick back up on something that Mr. Bourne mentioned, and that is contained in this plea agreement that you're offering is certain waiver of appellate rights. It states "Defendant entirely waives his right to a direct appeal of his conviction and his sentence." The only exceptions are three; that is, if but only if one of these three things were to occur you would get a direct appeal right. If not, by virtue of this plea agreement, you waive all other direct appeal rights. The only three exceptions are, Number 1, if I were to sentence you above the statutory maximum, you could appeal that directly. Number 2, if I were to sentence you above the advisory guideline range as found by me, you could appeal that directly, or Number 3, if the Government were to file a direct appeal, then you too could file a direct appeal, but otherwise, pursuant to this plea agreement, you waive all other direct appellate rights; understand?

(Id. at pp. 15–16.) Roberson stated he understood the appeal waiver provision. (Id. at p. 16.) Judge Wood also explained that the proposed plea agreement contained a waiver of certain of Roberson's collateral attack rights. She explained:

> Also contained in the agreement is a waiver of certain collateral attack rights. It states "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 USC Section 2255 motion." The only exception to that waiver is you do retain the right to collaterally attack based on a claim of ineffective assistance of counsel; understand?

(Id.) Roberson replied that he understood the collateral attack waiver provision and that he did not have any questions about it. (Id. at pp. 16–17.)

Judge Wood asked Mr. Harrison and AUSA Bourne whether they were aware of any impropriety on the part of the Government in handling Roberson's case, and they both responded in the negative. (Id. at p. 17.) Judge Wood then asked Roberson whether he wished to still plead guilty to Count One of the Indictment because he was in fact guilty of that count, and Roberson answered in the affirmative. (Id.) Judge Wood also asked Roberson whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did. (Id.)

Judge Wood determined that Roberson decided to plead guilty knowingly, intelligently, and voluntarily. (Id. at pp. 17–18.) Mr. Roberson affirmed that the medication he was taking did not interfere with this thought processes. (Id. at p. 18.) Judge Wood also found that he had the services of "of an excellent defense attorney who has gone over all the requisite pleadings and topics with him." (Id.) Roberson responded in agreement with Judge Wood's conclusions. (Id.)

Kevin Waters, a Task Force Officer with the United States Drug Enforcement Agency, provided the Government's factual basis for the plea. (Id. at pp. 19–20.) Waters testified that during the year 2013, agents investigated information that codefendants Bobby Courson and Kalvin Smith were trafficking methamphetamine in Coffee County and Jeff Davis County, Georgia. (Id.) The investigation included intercepted phone calls during which Roberson discussed drug transactions with Smith as well as a seizure of methamphetamine from Roberson. (Id.)

Upon questioning from Judge Wood, Roberson testified that he did not dispute any of the testimony given by Waters, and he admitted to the truth of Waters' testimony. (Id. at p. 20.) Judge Wood found that there was a factual basis for the plea of guilty, accepted Roberson's plea, and adjudged him guilty of Count One of the Indictment. (Id.) Judge Wood advised Roberson that the Probation Office would prepare a Pre-Sentence Investigation report ("PSI") and that the Court would schedule a sentencing hearing after the PSI was disclosed to the Government and the defense. (Id. at pp. 20–21.)

Prior to Roberson's sentencing hearing, United States Probation Officer Paul Skarupa prepared a PSI. Probation Officer Skarupa outlined Roberson's offense conduct and criminal history and calculated Roberson's advisory Guidelines range. Skarupa detailed Roberson's involvement in the Courson Drug Trafficking Organization ("DTO"). (PSI, ¶¶ 6–12.) Skarupa

explained that the investigation of the organization involved numerous investigative techniques, including witness interviews, confidential sources, surveillance, and the monitoring of telephone communications.  (Id. at ¶ 6.)  The investigation revealed that Roberson participated in the DTO by selling methamphetamine ("ice") to Defendant Kalvin Smith.  (Id.)

On August 1, 2014, law enforcement officers conducted a traffic stop of Roberson after observing him leave a "suspected drug house in Clayton County, Georgia."  (Id. at ¶ 7.)  At the initiation of the traffic stop, Roberson admitted that he had a loaded firearm in his driver's side door.  (Id.)  During a search of Roberson's vehicle, officers located a loaded .40 caliber pistol, 1,205 grams of ice, and $1,495.00.  (Id.)

Even after this search and the resulting arrest on state charges, officers intercepted phone calls wherein Roberson discussed the sale of methamphetamine and prescription drugs with Smith.  (Id. at ¶ 9.)  After Smith was arrested, he stated to law enforcement that he purchased up to 0.5 ounces of ice from Roberson on a weekly basis.  (Id. at ¶ 10.)

After Roberson's infant daughter tested positive for methamphetamine at birth, law enforcement officers assisted members of the Telfair County Department of Children's Services with a welfare check at Roberson's home.  (Id. at ¶ 11.)  After Roberson consented to a search of his property, officers located "a total of 29.8 grams of 'ice' inside five plastic bags; a loaded .32 caliber pistol; two smoking devices; several additional small plastic bags; a digital scale; surveillance equipment; cameras with night vision capabilities; and various items used to manufacture methamphetamine."  (Id.)

For Guidelines purposes, based on the entirety of the investigation, including the phone calls and seizures, Probation Officer Skarupa "conservatively" attributed Roberson with "1.4 kilograms of 'ice' and possessing two firearms in connection with quantities of drugs."  (Id. at

¶ 12.) Probation Officer Skarupa explained that, under U.S.S.G. § 2D1.1, an offense involving at least 500 grams but less than 1.5 kilograms of methamphetamine has a base offense level of 34. (Id. at ¶ 17.) Skarupa further concluded that a two-point offense level enhancement was warranted under U.S.S.G. § 2D1.1(b)(1) because Roberson possessed a dangerous weapon. (Id. at ¶ 18.) Officer Skarupa did not identify any need for a role in the offense adjustment. (Id. at ¶ 20.) However, Roberson received a three-level reduction for his acceptance of responsibility resulting in a total offense level of 33. (Id. at ¶¶ 24–26.)

Skarupa identified pending state charges against Roberson related to the instant Indictment. (Id. at ¶¶ 30, 31.) Those charges included trafficking methamphetamine and possession of a weapon during commission of a crime in Clayton County, Georgia, and possession of methamphetamine and possession of a weapon during the commission of a crime in Telfair County, Georgia. (Id.) However, those offenses were noted as "pending," and Roberson received no criminal history points for them. (Id.) Indeed, because Roberson had no recent convictions, he was not given any criminal history points, resulting in a criminal history category of I, the lowest under the Guidelines. (Id. at ¶ 29.) According to the PSI, Roberson's Guidelines range for imprisonment was 135 to 168 months. (Id. at ¶ 51.) Officer Skarupa identified Roberson's substantial assistance to authorities as a factor that may warrant downward departure from the Guidelines range under Section 5K1.1. (Id. at ¶ 66.) According to Skarupa, while Mr. Harrison submitted numerous objections to the original draft of the PSI, those objections were resolved by the final draft or withdrawn. (PSI, Addendum.)

Roberson appeared before Judge Wood for a sentencing hearing on January 14, 2016. (Doc. 290.) At that hearing, Judge Wood heard from Roberson, Roberson's counsel, and counsel for the Government regarding Roberson' potential sentence. (Doc. 330.) This colloquy began

by Judge Wood asking Roberson if he had an opportunity to read the PSI and discuss it with Mr. Harrison. (<u>Id.</u> at pp. 2–3.) Mr. Roberson responded that he had. (<u>Id.</u> at p. 3.) Judge Wood asked, "Are there any objections remaining to either the factual statements contained in that report or to the probation officer's application of the advisory guidelines?" (<u>Id.</u> at p. 3.) Roberson responded, "**No, ma'am.**" (<u>Id.</u> (emphasis added).) Mr. Harrison then confirmed that there were no objections to either the factual accuracy of the PSI or the Probation Officer's application of the Guidelines. (<u>Id.</u>) There being no objections from the Government or Roberson, Judge Wood adopted the PSI's findings of fact and conclusions regarding the advisory Guidelines range. (<u>Id.</u>) In accordance with the PSI, Judge Wood determined that Roberson's offense level was thirty-three and his criminal history category was one. (<u>Id.</u>) Thus, the Guidelines called for a sentence between 135 to 168 months in prison. (<u>Id.</u>)

Mr. Harrison identified Roberson's mother and father that were in the courtroom in support of Roberson and offered arguments in mitigation of the sentence. (<u>Id.</u> at pp. 3–9.) Mr. Harrison emphasized Roberson's cooperative nature, his contrition, his work history, his lack of criminal history, and his struggles with substance abuse. (<u>Id.</u>) Mr. Harrison also argued that Roberson was not a "heavy volume trafficker" and that he instead only dealt low end amounts of ice to support his own addiction. (<u>Id.</u> at p. 6.) He also asked that the Court vary below the Guidelines range because of the disparity between the Guideline calculation applicable to ice versus the calculation applicable to substances that contain a mixture of methamphetamine. (<u>Id.</u> at pp. 7–8.) Mr. Harrison argued that the Court sentence Roberson to 100 months' imprisonment particularly given Roberson's role in the conspiracy. (<u>Id.</u> at p. 9.) In response, AUSA Bourne argued, among other things, that despite Roberson's minimal criminal history, he "was a fairly large dealer for this area, Your Honor. He was one of the suppliers for Kalvin Smith." (<u>Id.</u> at

pp. 10–11.)  Judge Wood then provided Roberson an opportunity to address the Court, and he stated, "I just want to take the punishment you give and get it over with and get back to my kids and my family, put all this behind me."  (Id. at p. 11.)

Judge Wood then stated that she had listened to all of the information that had been presented, including everything stated at the sentencing hearing and the PSI.  (Id. at pp. 11–12.) Based on all of that information and consideration, Judge Wood pronounced a sentence at the low end of the Guidelines range, 135 months' imprisonment.  (Id. at p. 12.)  Judge Wood explained that what drove the sentence was the "stunning amount of that very dangerous drug" that Roberson possessed but that she sentenced him at the low end of his Guidelines range due to his "very paltry criminal history."  (Id.)  Judge Wood advised Roberson that he waived his right to appeal with limited exceptions, pursuant to his plea agreement, but advised Mr. Harrison to review the notice of post-conviction obligation with Roberson.  (Id. at pp. 13–14.)

On January 20, 2016, Mr. Harrison filed a Post-Conviction Consultation Certification. (Doc. 293.)  That certification, signed by both Roberson and Mr. Harrison, stated that Mr. Harrison explained to Roberson the appellate process, advised him of his right to appeal, and discussed the advantages and disadvantages of filing an appeal.  (Id.)  Mr. Harrison and Roberson also certified that Mr. Harrison thoroughly inquired of Roberson whether he wanted to file an appeal and that Roberson

> decided not to file an appeal, and [Mr. Harrison has] explained to him/her the consequences of failing to do so.  Those consequences include the waiver of his/her right to complain about the process that led up to his/her conviction, including in the future, should he/she decide to seek any form of habeas corpus, 28 U.S.C. § 2255, or other judicial relief from the conviction.

(Id.)  Roberson did not file a direct appeal of his conviction or sentence.  On May 12, 2016, Roberson filed a Motion to Reduce his sentence based on Amendment 782's revision to the

Guidelines drug quantity table. (Doc. 316.) The Court denied that Motion on May 13, 2016, because Roberson was sentenced after the drug quantity table was amended. (Docs. 317, 317-1)

## DISCUSSION

Roberson filed the instant Section 2255 Motion on January 9, 2017. (Doc. 328.) Roberson raises four arguments in support of his Motion: (1) that he received enhancements in his sentence for the weapons charges against him in the Superior Court of Clayton County and (2) Superior Court of Telfair County despite the fact that he had not been convicted of those charges and the State subsequently nolle prossed those charges, (id. at pp. 5–9, 13–15); (3) that Mr. Harrison rendered ineffective assistance by failing to object to the alleged sentencing enhancements based on the charges in Clayton County and Telfair County, (id. at pp. 10–12); and (4) that he is entitled to a minor role participant reduction given retroactive changes to the Sentencing Guidelines, (id. at pp. 16–19).

**I.     Roberson's Claim that the Court Erroneously Enhanced his Sentence for Possession of a Firearm due to Charges Pending against him in Clayton County and Telfair County**

**A.     Roberson's Firearm Enhancement Claims fail on the Merits**

Roberson claims that the Court somehow enhanced his sentence because he had charges pending against him in Clayton County and Telfair County and that the Court operated under the misimpression that he had been found guilty of those charges. The record in this case entirely contradicts this claim. The PSI made abundantly clear that the Clayton County and Telfair County cases were "pending charges." (PSI, ¶¶ 30, 31.) Indeed, as to the Telfair County charges, the PSI "noted that these charges are scheduled to be dead docketed upon sentencing in the instant matter." (Id. at ¶ 31.) Probation Officer Skarupa assigned no criminal history points whatsoever for these charges and assigned Roberson a criminal history score of "zero." (Id. at ¶

29.)  At the sentencing hearing, after Roberson himself stated that he had no objections to the factual statements or application of the Guidelines in the PSI, Judge Wood adopted those statements and application.  (Doc. 330, p. 3.)  Mr. Harrison, AUSA Bourne, and the Court repeatedly stated during the sentencing hearing that Roberson had no criminal history points or no criminal history to speak of.  Indeed, when announcing the sentence, Judge Wood reasoned that Roberson's lack of criminal history warranted a sentence at the low end of his Guidelines range.  (Id. at p. 12.)  Thus, Roberson's argument that the Court operated as if he had been convicted of the charges in Clayton County and Telfair County lacks any support or credibility.

Roberson did receive a two-level enhancement in his total offense level for possessing a firearm during his participation in the drug trafficking conspiracy.  (PSI, ¶ 18.)  He apparently operates under the misimpression that he received this two-level enhancement because the charges pending against him in Clayton County and Telfair County included possession of a weapon during the commission of a crime.  The Court did not base the enhancement on the nature of Roberson's state charges.  Rather, the Court increased Roberson's total offense level by two due to his relevant conduct as to the crime he pleaded guilty to in this Court.

In calculating Roberson's Guideline range, including whether his offense level should be increased for possession of a firearm, this Court was required to consider all of Roberson's relevant conduct.  U.S.S.G. § 1B1.3(a)(2); United States v. Siegelman, 786 F.3d 1322, 1332–33 (11th Cir. 2015) ("[R]elevant conduct is broadly defined to include both uncharged and acquitted conduct that is proven at sentencing by a preponderance of the evidence." (citation omitted)).  When considering relevant conduct, the Court must consider all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by Roberson.  U.S.S.G. § 1B1.3(a)(1)(A).  Roberson is responsible for all acts and omissions that were part of

the "same course of conduct or common scheme or plan as the offense of conviction." Id. § 1B1.3(a)(2). Offenses are part of a common scheme or plan if they are substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. Id. § 1B1.3 cmt. n.5(B)(i). Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Id. § 1B1.3 cmt. n.5(B)(ii). Roberson's relevant conduct also includes the acts that his coconspirators took during the conspiracy, in preparation for the conspiracy, or in the course of attempting to avoid detection that were "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." Id. § 1B1.3(a)(1)(B). The Eleventh Circuit Court of Appeals "broadly interprets the provisions of the relevant conduct guideline." United States v. Behr, 93 F.3d 764, 765 (11th Cir. 1996) (per curiam) (citation omitted).

In regard to drug trafficking defendants such as Roberson, the United States Sentencing Guidelines recommend that the Court increase the defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). "The enhancement for weapon possession [] reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 cmt. n.11(A). "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Id.

As with all sentencing enhancements, the Government bears the burden of proof to establish the evidence necessary for a Section 2D1.1(b)(1) enhancement by a preponderance of the evidence. United States v. Dimitrovski, 782 F.3d 622, 628 (11th Cir. 2015). "To justify a firearms enhancement, the government must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006) (citing United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001)). "If the government is successful in meeting this initial burden, then the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was 'clearly improbable.'" United States v. Grimes, 705 F. App'x 897, 900 (11th Cir. 2017) (per curiam) (citing Stallings, 463 F.3d at 1220; U.S.SG. § 2D1.1 cmt. n.11(A)). The Eleventh Circuit has held that a proximity between guns and drugs, alone, is sufficient for the Government to meet its burden as to a Section 2D1.1(b)(1) firearms enhancement. United States v. Carillo-Ayala, 713 F.3d 82, 91–92 (11th Cir. 2013). For example, the firearm enhancement was appropriately applied where a gun was recovered in the same room as scales, a bag containing cocaine residue, and a large amount of cash. United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995); see also United States v. Smith, 127 F.3d 1388, 1389–90 (11th Cir. 1997) (per curiam) (defendant's possession of firearm upon his arrest for offense charged in first count, at which time he also possessed crack cocaine that led to second count, was "relevant conduct" that warranted enhancement of his base offense level); United States v. Hansley, 54 F.3d 709, 716 (11th Cir. 1995) (firearm enhancement proper where "agents found a firearm and other drug-related items in [defendant's] residence, where he engaged in conspiratorial conversations").

In this case, Roberson's relevant conduct clearly reveals that he not only dealt drugs but also possessed a firearm in close proximity to his drugs. Roberson pleaded guilty to Count One which charged him with participating in a conspiracy to distribute and possess with intent to distribute drugs from on or about 2013 to late April 2015. (Doc. 3, pp. 1–2.) As laid out in the PSI, during this time period, Roberson was found to be in possession of a loaded pistol and drugs on two occasions. First, on August 1, 2014, officers located a loaded .40 caliber pistol in the driver's side door of his vehicle along with 1,205 grams of ice and $1,495.00. (PSI, ¶ 7.) Then, on January 26, 2015, a search of Roberson's residence uncovered a loaded .32 caliber pistol, 29.8 grams of ice, and several tools of the drug trade including a digital scale and smoking devices. (Id. at ¶ 11.) Roberson readily admitted to the factual accuracy of these statements at his sentencing hearing. (Doc. 330, p. 3.) In other words, by Roberson's own admission, a firearm was present at the site of his charged conduct, and he possessed a firearm during conduct associated with the conspiracy. Stallings, 463 F.3d at 1220.

Roberson's Section 2255 claims could be broadly construed to argue that the Court did not have sufficient proof that he possessed a firearm during his participation in the drug distribution conspiracy. This putative claim is without merit. A sentencing court "may consider all relevant information, regardless of its admissibility under the rules of evidence." United States v. Onofre-Segarra, 126 F.3d 1308, 1310 (11th Cir. 1997) (citations omitted). Relevant information includes evidence presented during the sentencing hearing. United States v. Louis, 559 F.3d 1220, 1224 (11th Cir. 2009). "[A] court may rely on hearsay at sentencing, as long as the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence." United States v. Mathis, 710 F. App'x 396, 399 (11th Cir. 2017) (per curiam) (quoting United States v. Anderton, 136

F.3d 747, 751 (11th Cir. 1998)).  In order to rely upon hearsay at sentencing, the statements need only to have a "minimal indicia of reliability" and, when the reliability of the information is apparent from the record, the sentencing judge need not make explicit findings regarding reliability.  Id. (citing United States v. Docampo, 573 F.3d 1091, 1098 (11th Cir. 2009); United States v. Reme, 738 F.2d 1156, 1167 (11th Cir. 1984)).  Pertinent to the case at hand, "[i]f a defendant does not dispute facts in the [PSI], he is deemed to have admitted them and is precluded from making 'the argument that there was error in them.'"  Id. (quoting United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009)).  Here, the Court had reliable information, by way of the PSI, that Roberson twice possessed a firearm during his offense conduct.  Roberson himself readily admitted to the factual accuracy of that information at his sentencing hearing. (Doc. 330, p. 3.)[3]  Therefore, he cannot now be heard to argue that the Court did not have sufficient proof for the Section 2D1.1(b)(1) enhancement.

The Court should also reject any claim that Roberson's offense level should not have been enhanced because the federal grand jury did not charge him with possession of a firearm. Whether the Indictment charged Roberson with possession of a firearm is of no moment for purposes of determining his relevant conduct.  "Because the limits of sentencing accountability are not coextensive with the scope of criminal liability, relevant conduct is broadly defined to include both uncharged and acquitted conduct that is proven at sentencing by a preponderance of the evidence."  Siegelman, 786 F.3d at 1332 (citation and internal quotation marks omitted); see also United States v. Rodriguez, 751 F.3d 1244, 1256 (11th Cir. 2014) ("proper calculation of the guidelines requires consideration of 'all relevant conduct,' not merely charged conduct" (citation omitted)); United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006) (district courts are

---

[3]  Even now, in his Section 2255 pleadings, other than disputing his Clayton and Telfair County charges, Roberson does not appear to dispute the factual accuracy of the PSI.  (See Doc. 328, pp. 12–15.)

required to consider all relevant, not just charged, conduct in calculating the Guidelines range (citations omitted)).  Even where a sentencing enhancement is based on acquitted conduct, the enhancement does not violate the Fifth Amendment Due Process Clause or the Sixth Amendment.  United States v. Faust, 456 F.3d 1342, 1347–48 (11th Cir. 2006) (citing United States v. Booker, 543 U.S. 220, 223, 240–241, 259 (2005)); see also United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir. 2005) (the use of extra-verdict enhancements, under an advisory guidelines regime, is not unconstitutional).

In sum, regardless of any state charges against him, Roberson's relevant conduct as to his federal conspiracy conviction warranted a two-level increase in his total offense level under U.S.S.G. § 2D1.1(b)(1).  By Roberson's own admission, he twice possessed loaded pistols along with significant amounts of drugs which he intended to distribute.  For these reasons, the Court should **DENY** Roberson's firearm enhancement claims on the merits.

### B.    Roberson Cannot Raise his Guidelines Claim in his Section 2255 Motion

Moreover, even if Roberson's claim that that the Court should not have enhanced his offense level under Section 2D1.1(b)(1) had merit, he cannot raise that argument in his Section 2255 Motion.  Section 2255 is not intended to be "a substitute for direct appeal," and thus, non-constitutional claims "can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'"  Burke v. United States, 152 F.3d 1329, 1331 (alteration in original) (quoting Reed v. Farley, 512 U.S. 339, 348 (1994)).  The Eleventh Circuit has recognized, "[a]ny miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory."  Spencer v. United States, 773 F.3d 1132, 1140 (11th Cir. 2014).  Roberson's claim that the Court improperly calculated his

offense level at his sentencing hearing is not a constitutional one. Further, this claim does not indicate that he suffered a complete miscarriage of justice or that his sentencing proceeding was tainted by an omission inconsistent with the rudimentary demands of fair procedure. Consequently, he cannot raise the claim through Section 2255. Thus, even if Roberson's firearm enhancement claims had a modicum of merit, the Court must **DISMISS** the claims.

### C. Roberson's Collateral Attack Waiver Bars his Claim that the Court Erred at Sentencing

The collateral attack waiver in Roberson's plea agreement provides yet another barrier to this claim. It is well-settled that waiver of appeal[4] and collateral attack provisions contained in a plea agreement are enforceable if the waivers are knowing and voluntary. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)). "'To establish the waiver's validity, the government must show *either* that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver.'" United States v. Cruz, 300 F. App'x 686, 688 (11th Cir. 2008) (per curiam) (emphasis added) (quoting Weaver, 275 F.3d at 1333). "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999). "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous." Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007) (per curiam) (citation omitted).

---

[4] "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence. United States v. Bushert, 997 F.2d 1343, 1345, 1350 & n.17 (11th Cir. 1993). Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364–67 (N.D. Ga. 2004).

As laid out in detail above, Judge Wood engaged in an extensive plea colloquy with Roberson at the Rule 11 hearing to be certain that he understood his plea agreement and that his guilty plea was intelligent, knowing, and voluntary. Judge Wood directly advised Roberson regarding his collateral attack waiver and specifically questioned him about it. (Doc. 331, pp. 16–17.) She read the waiver to him, explained its plain terms, and asked if he understood it and if he had any questions about it. (Id.) Roberson responded to Judge Wood, under oath, that he understood the waiver to which he was agreeing and that he had no questions about it. (Id.) When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). Moreover, from the entire record, including the Rule 11 colloquy and the written plea agreement that Roberson signed, it is "manifestly clear" that Roberson fully understood the significance of the waiver. Having sworn under oath that he read, understood, and consented to his plea agreement and having received the benefit of the bargain of that agreement, Roberson cannot now dodge the agreement's plain terms.

As Roberson's collateral attack waiver was undoubtedly valid, the Court turns to the question of whether the waiver covers Roberson's argument that the Court erred by failing to give him a downward departure for his role in the offense. Through the plain language of the collateral attack waiver, Roberson agreed not to collaterally attack his conviction and sentence, including through a Section 2255 Motion, "on any ground and by any method." (Doc. 246, p. 8.) The "only exception" allows Roberson to file claims based on ineffective assistance of counsel. (Id.) Thus, Roberson's collateral attack waiver clearly covers his claim that the Court erred in calculating his Guidelines range.

This provides yet another reason for the Court to **DISMISS** Roberson's claim that the Court erred by increasing his Guidelines offense level for his possession of a firearm.

### D. Roberson Procedurally Defaulted his Firearms Enhancement Claims by Failing to File an Appeal

Moreover, while Roberson now seeks to directly attack his sentence (in addition to challenging his counsel's performance), he has waived that attack because he did not challenge his sentence on appeal. Indeed, he did not file any appeal in this case. In the Eleventh Circuit, under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (citation omitted). The procedural default rule "'is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.'" Id. (quoting Massaro v. United States, 538 U.S. 500, 504 (2003)).

A showing of "cause and prejudice" can overcome a defendant's default. Id.[5] More specifically, a defendant can overcome "application of the procedural default bar 'by show[ing]

---

[5] "Under the actual innocence exception—as interpreted by current Supreme Court doctrine—a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself." McKay, 657 F.3d at 1196 (citing Dretke v. Haley, 541 U.S. 386, 388 (2004)). However, the Eleventh Circuit has held that the actual innocence exception to procedural default does not apply to a defendant's claim that he is actually innocent of a sentencing enhancement where that claim is based on legal, as opposed to factual, innocence. Id. at 1198–99. Further, allegations of error in the application of the Sentencing Guidelines are not constitutional claims and they do not implicate the doctrines of "actual innocence" or "fundamental miscarriage of justice." Gilbert v. United States, 640 F.3d 1293, 1318–23 (11th Cir. 2011). The Eleventh Circuit has held that a "claim that a sentencing guidelines provision was misapplied . . . is not a constitutional claim. If it were, every guidelines error would be a constitutional error." Gilbert, 640 F.3d at 1321. Thus, "[i]n Gilbert and subsequent decisions, the Eleventh Circuit has made clear that an error in application of the sentencing guidelines . . . does not constitute a 'fundamental miscarriage of justice' or satisfy the 'actual innocence' exception to the procedural-default doctrine and are therefore subject to the ordinary rules of procedural default, as long as the sentence imposed does not exceed the statutory maximum sentence that would have been applied absent the error." Allegree v. Carr, No. 2:11CV142-

22

cause for not raising the claim of error on direct appeal <u>and</u> actual prejudice from the alleged error.'" <u>Id.</u> (alteration and emphasis in original) (quoting <u>Lynn v. United States</u>, 365 F.3d 1225, 1234 (11th Cir.2004)).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." <u>Lynn</u>, 365 F.3d at 1235 (citations omitted).

Construing his claims broadly, Roberson appears to argue that the Court should excuse his procedural fault due to Mr. Harrison's allegedly ineffective assistance.  (Doc. 328, pp. 10–12.)  To be certain, a meritorious claim of ineffective assistance of counsel can constitute cause to excuse a procedural default.  <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000).  However, as the Eleventh Circuit has explained, a defendant does not clear the procedural default hurdle merely by invoking the phrase "ineffective assistance" or making conclusory allegations about counsel's performance:

> In order to [excuse procedural default], however, the claim of ineffective assistance must have merit.  [<u>Greene v. United States</u>, 880 F.2d 1299, 1305(11th Cir. 1989).]  To determine whether it does, we must decide whether the arguments the defendant alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal.  <u>Miller v. Dugger</u>, 858 F.2d 1536, 1538 (11th Cir. 1988).  Appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984).

<u>Id.</u>

As discussed below at length, Roberson does not raise a meritorious claim of ineffective assistance of counsel.  At the very least, it was reasonable for Mr. Harrison to consider that

---

TMH, 2012 WL 6042198, at *2 n.3 (M.D. Ala. Oct. 23, 2012) (citing <u>Gilbert</u>, 640 F.3d at 1306; <u>McKay</u>, 657 F.3d at 1200; <u>Bido v. United States</u>, 438 F. App'x 746, 748 (11th Cir. 2011); <u>Orso v. United States</u>, 452 F. App'x 912, 914–15 (11th Cir. 2012)), *report and recommendation adopted by* 2012 WL 6042196 (M.D. Ala. Dec. 4, 2012); <u>see also</u> <u>Frank v. United States</u>, No. CR 103-045, 2012 WL 12969683, at *3 (S.D. Ga. Oct. 18, 2012) (the Eleventh Circuit has rejected the notion that "actual innocence" can apply to a Guidelines enhancement).

challenging Roberson's firearms enhancement would be without merit. Further, Roberson has failed to show that any arguments Mr. Harrison supposedly should have made would have affected the outcome of his case.

In short, Roberson has failed to demonstrate the "cause and prejudice" necessary to excuse his procedural default. Because he failed to directly appeal his firearm enhancement, he cannot now claim through a Section 2255 Motion that this Court erred in its Guidelines calculation. This provides yet another reason for the Court to **DISMISS** Roberson's firearms enhancement claims.

## II. Roberson's Claims that Mr. Harrison Rendered Ineffective Assistance

### A. Standards for Roberson's Ineffective Assistance Claims

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668, 685–86 (1984). This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001). Furthermore, the right to effective assistance of counsel includes the right to representation free from conflicts of interest. Cuyler v. Sullivan, 446 U.S. 335, 348–50 (1980). A defendant's guilty plea, appeal waiver, or collateral attack waiver does not preclude an ineffective assistance of counsel claim premised on an involuntary and unintelligent plea. United States v. Puentes-Hurtado, 794 F.3d 1278, 1281, 1285 (11th Cir. 2005).

To prevail on a claim of ineffective assistance of counsel, Roberson must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 685–86. "If a petitioner cannot satisfy one prong, we need

not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). Thus, if Roberson cannot show prejudice, the Court need not determine whether his allegations show that his counsel's performance fell below an objective standard of reasonableness.

The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (per curiam) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (alteration in original) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004)). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. Further, retrospective judicial scrutiny of counsel's performance "must be highly deferential" and must "eliminate the distorting effects of hindsight." Id. at 689. "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).

"Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood

of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Additionally, a movant is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted). "The allegations must be factual and specific, not conclusory. Conclusory allegations are simply not enough to warrant a hearing." Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir. 2011) (citing San Martin v. McNeil, 633 F.3d 1257, 1271 (11th Cir. 2011)). For a movant proceeding *pro se*, the court will liberally construe the pleading, but he or she "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). "An evidentiary hearing may be necessary where the material facts are in dispute, but a [movant] is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics." Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006) (citations omitted). Stated another way, "if a habeas petition does not allege enough specific facts, that if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." Chavez, 647 F.3d at 1060 (citing Allen v. Sec'y Fla. Dep't of Corr., 611 F.3d 740, 763 (11th Cir. 2010)). Further, because solemn representations at a plea hearing by a defendant, his attorney, and the prosecutor "carry a strong presumption of verity" and "constitute a formidable barrier in subsequent collateral proceedings," a movant's later "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v.

_Allison_, 431 U.S. 63, 73–74 (1977) (citing _Machibroda v. United States_, 368 U.S. 487, 495–96 (1962); _Price v. Johnston_, 334 U.S. 266, 286–87 (1948)).

**B.  Analysis of Roberson's Ineffective Assistance Claims**

Roberson contends that Mr. Harrison should have objected to the two-level firearm enhancement to his offense level under Section U.S.S.G. § 2D1.1(b)(1).  (Doc. 328, p. 10.) Roberson's ineffective assistance claims arise out of the same misconceptions as his direct claims against the firearms enhancement.  He believes that the firearm enhancement was based on the state charges pending against him rather than his relevant conduct in this case.  He claims that Mr. Harrison should have pointed out to the Court that the charges were "pending and no resolution was found" and that Roberson was presumed "innocent until proven guilty" of the state charges. (_Id._)  As explained above, the Court was well aware that the state charges against Roberson were still pending and that Roberson had not been adjudicated guilty of those charges.  (PSI, ¶¶ 30, 31.) Further, the PSI explained that the charges in Telfair County would be dead docketed upon sentencing in Roberson's federal case.  (_Id._ at ¶ 31.)  Probation Officer Skarupa gave Roberson no criminal history points, enhancements, or other additions to his Guidelines calculation due to the fact that Roberson had state charges pending against him.  (_See id._ at ¶ 29.)  Probation Officer Skarupa based the Section 2D1.1(b)(1) offense level enhancement not on the state charges or any other criminal history but on the facts recited in the PSI as to Roberson's offense conduct.  (_Id._ at ¶ 12 ("Therefore, for the purpose of guideline calculations, Roberson is attributed with 1.4 kilograms of 'ice' and possessing two firearms in connection with quantities of drugs.").)  Further, Judge Wood ordered Roberson's sentence to run concurrent with any sentence "that **might be** imposed with regard to the Clayton County case and the Telfair County case."  (Doc. 330, p. 12 (emphasis added).)  Thus, there was no need for Mr. Harrison to point out to the Court that

Roberson had not been found guilty of the state charges and any argument to the contrary borders on delusional.

Moreover, Mr. Harrison did not render ineffective assistance of counsel by declining to object to the Section 2D1.1(b)(1) enhancement. Roberson's arguments to the contrary are blind to the actual facts of his case, ignore his own statements and the uncontroverted statements of others, and disregard the fundamental operation of the Guidelines. In addition, Roberson testified at the plea hearing that he was satisfied with Mr. Harrison's services and that he had no complaints about Mr. Harrison whatsoever. (Doc. 331, p. 10.) Therefore, the Court should reject Roberson's attempts to contradict his own sworn testimony and plea hearing declarations. See Blackledge, 431 U.S. at 73–74 (solemn representations at a plea hearing by a defendant, his attorney, and the prosecutor "carry a strong presumption of verity" and "constitute a formidable barrier in subsequent collateral proceedings," thus a movant's later "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal").

As laid out in detail above, the sentencing phase of Roberson's case confirms the validity of the firearm enhancement and, thus, the reasonableness of Mr. Harrison's representation. Again, in the PSI, Probation Officer Skarupa explained that Roberson twice possessed a loaded in pistol in close proximity to significant amounts of illegal drugs which Roberson admitted he possessed with the intent to distribute. (PSI, ¶¶ 7, 11.) Roberson stated at the sentencing hearing that he had the opportunity to read and review the PSI and discuss it with Mr. Harrison, and Roberson personally stated that he had no objections to the factual statements in the PSI. (Doc. 330, p. 3.) Under these facts and the above-cited Eleventh Circuit precedent, it would have been foolhardy for Mr. Harrison to object to the two-level enhancement under Section 2D1.1(b)(1). Mr. Harrison had no obligation to advance an argument that had no legal merit. Diaz-Boyzo v.

United States, 294 F. App'x 558, 560 (11th Cir. 2008) (per curiam) (counsel not ineffective for failing to pursue a non-meritorious issue.)

Furthermore, if Mr. Harrison had objected to the distribution enhancement, he would have jeopardized the plea agreement and the benefits that Roberson received from it, including the reduction in Roberson's offense level for acceptance of responsibility. Additionally, despite the daunting facts and precedent that Roberson's case presented, Mr. Harrison did not sit idly by during the sentencing hearing. Rather, he advanced numerous arguments for a sentence below the Guidelines range and highlighted the mitigating evidence in Roberson's case including his contrition and cooperation. (Doc. 330, pp. 4–9.) This strategy would have been significantly threatened by Mr. Harrison advancing a dubious argument that Roberson did not possess a firearm in connection with his drug distribution activities. While Mr. Harrison's efforts were not successful in obtaining the below-Guidelines sentence that counsel argued for, they did compel Judge Wood to sentence Roberson at the low end of the Guidelines range.

No competent attorney would have argued that Roberson could not receive a firearm enhancement because the state charges against him had not yet been adjudicated. Such an argument would contradict even an elementary understanding of the Guidelines and their operation. Thus, Roberson has failed to establish Mr. Harrison's efforts fell outside of the range of competence demanded of attorneys in criminal cases. Hill, 474 U.S. at 56.

Moreover, even if Mr. Harrison had rendered ineffective assistance, Roberson has failed to demonstrate prejudice. As laid out in detail above, Roberson's relevant conduct in this case clearly qualifies him for Section 2D1.1(b)(1)'s two-level enhancement for possession of a firearm. Even now, other than conclusory and misplaced allegations, he fails to explain why he should not have received the enhancement in his offense level. He does not credibly dispute the

fact that he possessed a firearm during his participation in the drug distribution conspiracy. Therefore, Roberson has failed to show a reasonable probability that the outcome of his case would have been different if Mr. Harrison had objected to the firearm enhancement.

For all of these reasons, the Court should **DENY** Roberson's claims that his trial counsel rendered ineffective assistance of counsel.

## III.    Roberson's Claim to a Mitigating Role Reduction

The United States Sentencing Guidelines provide for a decrease in a defendant's offense level when the defendant plays a minimal or minor role in any criminal activity. Specifically, Section 3B1.2 provides:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a)    If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b)    If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.

Prior to Roberson's sentencing, the United States Sentencing Commission revised the commentary to Section 3B1.2 but not the language of the actual Guidelines provision. <u>See</u> U.S.S.G. app. C supp., amend. 794 (discussing the revised commentary). Amendment 794, which became effective on November 1, 2015, made several revisions, including adding a "non-exhaustive list of factors" that the court should consider in determining whether to apply the adjustment. <u>Id.</u> Under the revised version of the commentary,

> [i]n determining whether to apply [a minimal or minor participant adjustment] or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3. The Commission also added commentary that "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." Id. Rather, such a defendant may receive a mitigating role adjustment if he is "substantially less culpable than the average participant in the criminal activity." Id.

The Eleventh Circuit has held that these amendments to the commentary are clarifying and not substantive amendments and that the amendments, therefore, apply retroactively on direct appeal. United States v. Cruickshank, 837 F.3d 1182, 1194 (11th Cir. 2016) (citation omitted). However, the Court also stated that the amendments "continue to embrace the approach" that the Eleventh Circuit took in its "leading case" concerning Section 3B1.2, United States v. De Varon, 175 F.3d 930, 945 (11th Cir. 1999). Id. at 1192–94. Roberson appears to argue that Amendment 794 was implemented after his PSI and sentence and that the Court should apply it retroactively to reduce his sentence. (Doc. 328, pp. 16–19.) However, Amendment 794 went into effect on November 1, 2015, prior to Roberson's PSI on December 8, 2015, and his sentencing hearing on January 14, 2016. Thus, the Court has already considered

Roberson's sentence under the updated version of the commentary. Moreover, the Court should reject Roberson's claim for a minor role reduction several reasons.

**A.    Roberson is not Entitled to a Section 3B1.2 Reduction Under any Version of the Commentary to the Guidelines**

The facts of Roberson's case in no way warrant the minor role reduction. When determining a defendant's role in the offense, a district court "must measure the defendant's role against the relevant conduct for which [he] has been held accountable." De Varon, 175 F.3d at 940. "In other words, the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." Id. at 941. Probation Officer Skarupa only attributed to Roberson the ice and pistols that were seized from him and the ice that Roberson discussed personally possessing with Defendant Smith. (PSI, ¶ 12.) Thus, Skarupa "conservatively" attributed Roberson with only the drugs and firearms that Roberson directly possessed. (Id. at ¶¶ 7, 9, 11, 12.) The Court adopted this attribution at the sentencing hearing. (Doc. 330, p. 3.) Because the Court only considered Roberson's actual drug possession as relevant conduct and not the conduct of his coconspirators, he cannot point to the larger conspiracy of his co-Defendants and argue that he played a minimal role relative to that larger enterprise. United States v. Ellwood, 188 F. App'x 935, 942 (11th Cir. 2006) (per curiam) (citing De Varon, 175 F.3d at 944).

Given that Roberson was only held accountable for the drugs he possessed, the Court was well within its discretion to conclude that Roberson played a significant or important role as to those drugs. Id. Indeed, when considering the factors in the revised commentary to Section 3B1.2, it would be absurd for the Court to find that Roberson played a minimal role in the relevant transactions. Roberson was the direct supplier of ice who provided Defendant Smith with up to half an ounce of ice on a weekly basis for one month. (PSI, ¶ 10.) He was twice

found to be in direct possession of significant quantities of ice as well as cash, firearms, and other tools of the drug trade. (Id. at ¶¶ 6–12.) Finally, Roberson was caught discussing his receipt of a large quantity of ice with Defendant Smith, encouraging Smith to purchase the drug, and pointedly telling Defendant Smith, "You need to hang out with me more. I hustle more shit and make more goddamn money than you can shake a stick at." (Id. at ¶ 9.)

In light of the undisputed facts before the Court at sentencing, Roberson's argument that the Court should have reduced his offense level by two levels under Section 3B1.2 has no basis in law or fact. Thus, the Court should **DENY** this claim on the merits.

### B. Roberson Cannot Raise his Guidelines Claim in his Section 2255 Motion

Moreover, even if Roberson's claim that that the Court should have reduced his offense level under Section 3B1.2 had merit, he cannot raise that argument in his Section 2255 Motion. As explained above, Section 2255 is not intended to be "a substitute for direct appeal," and thus, non-constitutional claims "can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" Burke, 152 F.3d at 1331 (alteration in original) (quoting Reed, 512 U.S. at 348). Further, "[a]ny miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory." Spencer, 773 F.3d at 1140. Roberson's claim that the Court should have applied Section 3B1.2 at his sentencing hearing is not a constitutional one. Furthermore, this claim does not indicate that he suffered a complete miscarriage of justice or that his sentencing proceeding was tainted by an omission inconsistent with the rudimentary demands of fair procedure. Thus, because guideline miscalculation claims are not cognizable through Section 2255, the Court must **DISMISS** Roberson's claim.

### C. Roberson's Collateral Attack Waiver Bars his Claim that the Court Erred at Sentencing

The collateral attack waiver in Roberson's plea agreement provides yet another barrier to this claim. As laid out in detail above, given the information regarding Roberson's collateral attack waiver in his plea agreement and his discussion of the waiver with Judge Wood during his Rule 11 colloquy, the waiver is valid and enforceable. Having found the collateral attack waiver to be valid, the Court turns to the question of whether the waiver covers Roberson's argument that the Court erred by failing to give him a downward departure for his role in the offense. Through the plain language of the collateral attack waiver, Roberson agreed not to collaterally attack his conviction and sentence, including through a Section 225 motion, "on any ground and by any method." (Doc. 246, p. 8.) The "only exception" allows Roberson to file claims based on ineffective assistance of counsel. (Id.) Thus, Roberson's collateral attack waiver clearly covers his claim that the Court erred in calculating his Guidelines range and in effect provides yet another reason for the Court to **DISMISS** Roberson's claim that the Court erred by not granting him a mitigating role reduction.

### D. Roberson Procedurally Defaulted his Mitigating Role Claims by Failing to File an Appeal

Moreover, Roberson waived his claim that the Court should have given him a mitigating role reduction because he did not challenge his sentence on appeal. The doctrine of procedural default is detailed above in the analysis of Roberson's firearm enhancement claims and need not be rehashed herein. Put succinctly, Roberson did not file any appeal in this case, and "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay, 657 F.3d at 1196. A showing of "cause and prejudice" can overcome a defendant's

default.  Id.  However, Roberson makes no effort to demonstrate cause and prejudice as to his failure to appeal the issue of a mitigating role reduction.  He does not claim any ineffective assistance of counsel or other barrier prevented him from raising this issue on appeal.  Thus, he cannot now raise the issue through a Section 2255 Motion.

For all of these reasons, the Court should **DISMISS** Roberson's claim that the Court erred by failing to reduce his offense level by two levels under Section 3B1.2.

## IV.  Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Roberson leave to appeal *in forma pauperis* and a Certificate of Appealability.  Though Roberson has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court <u>must</u> issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (emphasis added); <u>see also</u> Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  <u>Busch v. Cty. of Volusia</u>, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  <u>Neitzke v. Roberson</u>, 490 U.S. 319, 327 (1989); <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact."  <u>Napier v.</u>

Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Roberson's pleadings and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Roberson a Certificate of Appealability, Roberson is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as

there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** Roberson *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Roberson's Motion to Vacate, Set Aside, or Correct his Sentence. (Doc. 328.) Further, I **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Additionally, the Court should **DENY** Roberson a Certificate of Appealability and *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Roberson and Respondent.

      **SO ORDERED** and **REPORTED and RECOMMENDED**, this 11th day of April, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA